IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MARQUITA MATHEWS,　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　Plaintiff,　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　　　）　　　CASE NO.: 3:16-cv-474-MHT-GMB
　　　　　　　　　　　　　　　　　　　）　　　[WO]
WELLS FARGO BANK, N.A.,　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　Defendant.　　　　　　　　）

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Marquita Mathews filed this *pro se* action on June 22, 2016, alleging various claims arising out of her former employment with Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Docs. 1 & 31.  Pending before the court are cross-motions for summary judgment filed by Mathews and Wells Fargo on April 21, 2017 and May 30, 2017, respectively. Docs. 50 & 54.  Wells Fargo opposed Mathews' summary judgment motion, and Mathews replied. Docs. 55 & 57.  Mathews also opposed Wells Fargo's summary-judgment motion, and Wells Fargo replied. Docs. 60 & 61.  With the motions fully briefed, they are ripe for resolution by the court.

This matter was referred to the undersigned United States Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate. Doc. 3.  Having carefully considered the parties' submissions, the applicable authority, and the record as a whole, the undersigned hereby RECOMMENDS that Mathews' motion for summary judgment be DENIED, that Wells Fargo's motion for summary judgment be GRANTED, and that summary judgment be entered in Wells

Fargo's favor on all of Mathews' claims, as set forth below.

# I.  JURISDICTION

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The parties do not contest personal jurisdiction or venue, and the undersigned finds adequate allegations to support both in the Eastern Division of the Middle District of Alabama.

# II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  "This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact." *Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*, 2016 WL 233672, at *6 (M.D. Ala. Jan. 19, 2016) (citing *Celotex*, 477 U.S. at 323).

"If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of

its claims for relief exists." *Id.* (citing *Celotex*, 477 U.S. at 324).  To meet this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).  "[D]isagreement between the parties is not significant unless the disagreement presents a genuine [dispute] of material fact." *Gamble v. Pinnoak Res., LLC*, 511 F. Supp. 2d 1111, 1122 (N.D. Ala. 2007) (internal quotation marks omitted).  "Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment." *Walton-Horton v. Hyundai Motor Mfg. Ala., LLC*, 2009 WL 3764229, at *5 (M.D. Ala. Nov. 10, 2009) (citing *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam)).

Cross-motions for summary judgment must be considered separately, and "each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).  "But 'conclusory allegations without specific supporting facts have no probative value. One who resists summary judgment must meet the movant's [evidence] with opposing [evidence] setting forth specific facts to show why there is an issue for trial.'" *Belcher v. Grand Reserve MGM, LLC*, 2017 WL 4017883, at *2 (M.D. Ala. Sept. 12, 2017) (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).  In practice, cross-motions for summary judgment may be probative of the nonexistence of a factual dispute, but the

mere filing of cross-motions for summary judgment does not warrant the entry of summary judgment. *Id.* (internal quotation marks omitted).  In accordance with these directives, the court will consider each motion for summary judgment on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.

### III.  SUMMARY OF RELEVANT FILINGS

**A.    Amended Complaint**

Mathews' amended complaint is the operative pleading before the court. Doc. 31. Although this pleading does not clearly label the specific causes of action Mathews is asserting against Wells Fargo or identify which allegations support which cause of action, the court's lenient review of the amended complaint shows that Mathews is asserting claims against Wells Fargo under Title VII of the Civil Rights Act of 1964 ("Title VII") for harassment and a hostile work environment, failure to promote, unequal terms and conditions of employment, wrongful termination based on her race (black) and gender (female), retaliation, and a state-law claim for defamation.[1] Doc. 31.

**B.    Mathews' Motion for Summary Judgment and Related Filings**

On April 21, 2017, Mathews filed a motion for summary judgment on all of her claims against Wells Fargo. Doc. 50.  Although Mathews' motion contains arguments specifically directed to at least some of her claims, the motion itself is essentially a recitation of the amended complaint.  The court summarizes the arguments contained in

---

[1] Throughout her summary-judgment submissions, Mathews labels her state-law claim as one for both slander and libel.  To alleviate confusion, the court will refer to this claim as one for defamation, as that broader, more common term encompasses both libel and slander under Alabama law. *See Walton-Horton v. Hyundai Motor Mfg. Ala., LLC*, 2009 WL 3764229, at *8 n.6 (M.D. Ala. Nov. 10, 2009).

Mathews' motion below.

Mathews' claim for "unequal terms of employment"—or, more commonly, disparate treatment—is premised on the argument that she was hired as a part-time teller and not given the same type of training and opportunities as other employees hired after her who were not black women. More specifically, Mathews argues that, at the time she was hired, she was the only black woman employed in a teller position, and she was assigned to work at the back of the store with a flawed computer. However, after she was hired, the branch hired two full-time tellers—a white woman and a black man—who were assigned to work at the front of the store, were trained by the branch's white male service manager, were given access to SVP training materials,[2] and were allowed to perform other types of transactions that she was not allowed to perform. Doc. 50 at ¶¶ 1–2. Mathews contends that the branch's white male service manager refused to grant her access to SVP and would not train her because she is a black woman. Doc. 50 at ¶ 2.

Mathews also argues that she was unfairly placed on a performance improvement plan for failure to meet expectations, but the white male service manager would not give her the training she needed to perform her job to the company's expectations. Doc. 50 at ¶ 3. Mathews argues that another teller had to give her access to SVP, and Wells Fargo would not provide her with documentation confirming when she was given access to SVP. Doc. 50 at ¶ 3. Mathews also argues that she was not given proper credit for the services she offered to customers or accounts she opened for customers, and when she brought this

---

[2] Mathews describes SVP, also known as Store Vision Platform, as "a reference tool and guide that teaches about various types of product services and transactions." Doc. 31 at 8.

issue to the attention of the white male service manager, he responded that "it's complicated." Doc. 50 at ¶ 5.

For her "failure to promote" claim, Mathews relies on the same arguments she advances in support of her unequal terms of employment claim, but she also alleges that she was intentionally not told of a company policy regarding transaction processing, cash balancing, and operating losses until six months after her employment began because she is a black woman and because the white male service manager refused to train her. Doc. 50 at ¶ 4. Mathews also vaguely argues that she was overlooked for a promotion because the white male service manager intentionally refused to train her and disciplined her because she is a black woman. Mathews, however, does not articulate what promotion she was seeking, whether she actually applied for this promotion and when, and who ultimately received the promotion. Doc. 50 at ¶ 5.

With respect to her harassment and hostile work environment claim, Mathews argues that the new service manager—a black woman—told her that she needed to improve her work performance and advised her to submit service offers for customers without their consent. When Mathews refused to do this, she claims she was subjected to harassment and a hostile work environment by the black male store manager. Doc. 50 at ¶ 6. Again, Mathews does not specifically identify how she was subjected to harassment or a hostile work environment.

With respect to her retaliation claim, Mathews argues that she informed the black female service manager that she was being harassed by the black male store manager. She then called the company's human resources department and explained that she "was being

discriminated against" and that she would be resigning at the end of her two-weeks notice period.  Mathews claims that the human resources department told her that she could rescind her resignation if she resolved her problems at the branch level, but a few days later, "upper management," the black female service manager, and the black male store manager accepted her resignation early and terminated her employment before the end of her two-weeks notice period. Doc. 50 at ¶ 8.  Although Mathews' motion does not specifically address her wrongful termination claim, the court assumes that this argument is directed to that particular claim.

Mathews' motion also contains a few additional paragraphs not directed to any specific cause of action.  In these paragraphs, Mathews argues that she was unfairly accused of three cash drawer shortages because she is a black woman and because she would not participate in fraudulent sales practices. Doc. 50 at ¶ 7.  Mathews also contends that the black female service manager admitted during her unemployment compensation hearing that Mathews had reported harassment by the black male store manager to her but she did not follow up because the decision was made to accept Mathews' resignation early and not allow her to work out her two-weeks notice period. Doc. 50 at ¶ 9.

Finally, Mathews submits eight exhibits to support her motion.  These exhibits consist of a weekly work schedule for team members from December 7, 2014 to December 13, 2014 (Exhibit 1); offers of employment to Samantha Scott and Thurman Dinkins, Jr. (Exhibits 2A & B); Matthews' PIP dated November 17, 2014 (Exhibit 3); Acknowledgment of Responsibility: Transaction Processing, Cash Balancing, and Operating Losses policy signed by Mathews on January 20, 2015 (Exhibit 4); President's

List for Small Businesses January 2015 (Exhibit 5); an informal warning for cash differences issued to Mathews on June 1, 2015 (Exhibit 6); Wells Fargo's policy for reporting harassment (Exhibit 7); and the audio transcript of her unemployment benefits hearing (Exhibit 8). Doc. 50-1 to -8.  Notably, Mathews' motion is not supported by deposition testimony, answers to interrogatories, or any affidavits.  Her motion also contains no legal analysis of her claims, and she does not address her defamation claim whatsoever. *See* Doc. 50.

On May 30, 2017, Wells Fargo opposed Mathews' motion for summary judgment on a number of grounds. Doc. 55.  In doing so, Wells Fargo appropriately relied on the statement of undisputed facts and evidentiary submission presented with its cross-motion for summary judgment. Doc. 55 at n.1.

As an initial matter, Wells Fargo argues that Mathews' motion should be denied because she did not adequately cite to record evidence, she did not properly authenticate the documents included in her evidentiary submission, and she did not address in any way the legal grounds, including the most basic elements, of any of her claims.  Wells Fargo also contends that Mathews has abandoned her defamation claim and objects to the court considering her claim that she was subjected to a hostile work environment and accused of cash drawer shortages in retaliation for refusing to engage in fraudulent sales practices because that claim was raised for the first time in her summary-judgment motion. Doc. 55 at 1–6.

With respect to the merits of Mathews' motion, Wells Fargo argues that several of her claims are administratively barred because they either are untimely or were not

included in her charge of discrimination. Wells Fargo argues that the only claim not administratively barred is Mathews' claim that Wells Fargo retaliated against her by accepting her voluntary resignation early after she complained that the black male store manager was harassing her. According to Wells Fargo, this claim still fails because Mathews has not offered any evidence to establish a prima facie case of retaliation, and even if she had, she has not presented evidence to overcome Wells Fargo's legitimate, nondiscriminatory reason for accepting her resignation early and not letting her work through the end of her two-weeks notice period. Doc. 55.

On June 1, 2017, Mathews filed a reply to Wells Fargo's opposition. Doc. 57. In her reply, Mathews does not address the substance of any of the legal arguments made by Wells Fargo in its opposition, and she does not address the merits of any of her claims. Instead, Mathews discusses previous briefing orders and Wells Fargo's prior extension requests, both of which are irrelevant to her claims, and also accuses Wells Fargo of disobeying the court's orders. Doc. 57.

**C.    Wells Fargo's Motion for Summary Judgment and Related Filings**

Wells Fargo filed its motion for summary judgment on May 30, 2017, arguing that Mathews' claims fail as a matter of law. Doc. 54. Wells Fargo's motion is supported by an evidentiary submission consisting of (1) excerpts from Mathews' deposition testimony and exhibits from that deposition (Exhibits A & B); (2) the declaration of the branch store manager (Exhibit C); (3) the declaration of one of Wells Fargo's human resources representatives (Exhibit D); and (4) copies of several unreported cases that, according to

Wells Fargo, are relevant to this case (Exhibit E).[3] Docs. 54-1 to -6.

On July 17, 2017, Mathews filed an opposition to Wells Fargo's motion. Doc. 60. In her opposition, Mathews does not address the merits of Wells Fargo's arguments but instead focuses on her belief that miscommunications relating to the reading and signing of her deposition resulted in a violation of her Fourteenth Amendment due process and equal protection rights as well as a claim that Wells Fargo conspired to deny her those rights and to discriminate against her. Mathews also complains that Wells Fargo had an out-of-state attorney present at her unemployment hearing, that she did not get paid for her full two-weeks notice period, and that one of Wells Fargo's exhibits in its evidentiary submission contains a misrepresentation. For these reasons, Mathews requests that the court sanction Wells Fargo and strike its motion for summary judgment from the record. Doc. 60.

The court's June 1, 2017 briefing order specifically directed Mathews to take special notice of the requirements of Rule 56 in responding to a motion for summary judgment, explaining that she "must oppose the motion by filing sworn affidavits that demonstrate that there is a genuine issue of material fact for trial" and the "[f]ailure to file sworn affidavits may mean that the court accepts the moving party's evidence as the truth." Doc. 56. Despite these directives, Mathews' response does not address in any way the merits of Wells Fargo's arguments on summary judgment, nor has she submitted any affidavits or deposition testimony either in support of her own motion for summary

---

[3] The court recognizes and appreciates a party thoughtfully and respectfully bringing relevant case law or other legal authority to its attention, as Wells Fargo did here.

judgment or to oppose Wells Fargo's. *See* Docs. 50 & 60.

Wells Fargo replied to Mathews' response on July 24, 2017, and categorically denied her allegations that it violated her constitutional rights and the rules of discovery. Wells Fargo also noted that Mathews failed to present any actual argument or material evidence to support any of her claims and that she failed to demonstrate a genuine factual dispute exists warranting a trial on any of her claims. Wells Fargo contends that, consequently, it is entitled to summary judgment on all of Mathews' claims. Doc. 61.

### IV.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

As noted above, when the parties file cross-motions for summary judgment, each movant bears the burden of establishing that no genuine dispute of material fact exists warranting a trial, and the court must draw all reasonable inferences in favor of the nonmoving party. A party claiming that a fact cannot be genuinely disputed must support that claim by either (1) citing to specific parts of materials in the record showing the absence of a genuine dispute; (2) showing that the materials cited do not establish the presence of a genuine dispute; or (3) showing that an adverse party cannot produce admissible evidence to support the fact as alleged. Fed. R. Civ. P. 56(c)(1)(A)–(B). If a party fails to properly support a fact or to address another party's fact under Rule 56(c), the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(4).

Wells Fargo's summary-judgment motion contains a detailed statement of facts supported by citations to record evidence. While Mathews submitted evidence with her

summary-judgment motion and in opposition to Wells Fargo's motion, her evidence does not support her claims, and her motion does not contain a statement of facts with specific citations to record evidence, nor does her opposition address in any way the statement of facts contained in Wells Fargo's motion.  For the reasons explained in Section V.A. of this report and recommendation, the court will not reject Mathews' summary-judgment submissions outright based on these failings alone, because she did submit some evidence with her summary-judgment motion and opposition brief, and she did provide the court with some generalized citations to the record.  Rather, due to Mathews' failure to address Wells Fargo's statement of facts in any meaningful way and to support essentially all of her factual assertions with competent evidence in the record, the court will treat Wells Fargo's properly supported facts as undisputed when resolving the instant cross-motions for summary judgment.

Accordingly, it is within this framework that the court sets forth the following statement of facts and procedural history:

A.    **Facts**

Mathews is a black woman. Doc. 1.  On June 10, 2014, she applied for a part-time teller position at a Wells Fargo branch in Auburn, Alabama (hereinafter, the "Branch"). Docs. 54-2 at 6–9 & 54-3 at 2–6.  Mathews interviewed at the Branch with the service manager, Christopher Harrelson (white male), and store manager, Keonte Keith (black male). Doc. 54-2 at 9 & 66.  During her interview, Harrelson and Keith explained to Mathews that she was being considered for a part-time teller position and that she would have to earn a full-time position through her work performance. Doc. 54-2 at 36.

On June 30, 2014, Wells Fargo offered Mathews the position of part-time teller at the Branch with up to 20 scheduled hours per week, reporting directly to Harrelson. Docs. 54-2 at 38 & 54-3 at 7–8.  She accepted the position and began working at the Branch on July 8, 2014. Docs. 54-2 at 38 & 54-3 at 9.

Mathews received two weeks of orientation and training when she began her employment with Wells Fargo. Doc. 54-2 at 39.  She was trained on the tasks she would perform as a part-time teller, including making deposits and withdrawals, cashing checks, identifying fraudulent checks, performing cash currency exchanges, detailing every transaction, and maintaining professional and ethical conduct. Doc. 54-2 at 41–42 & 55–57.  She was also trained on balancing her cash drawer, the prohibition on forced balancing, and the significance of out-of-balance conditions and cash differences. Doc. 54-2 at 55–57.  She also received and reviewed the 2014 and 2015 team member handbooks, and she understood Wells Fargo's policies against workplace harassment, discrimination, and retaliation and how to report those problems. Docs. 54-2 at 45–50 & 54-3 at 10.  Mathews received the same orientation and training as other part-time tellers working at the Branch and she was subject to the same performance expectations as they were. Docs. 54-2 at 134–135 & 54-4 at ¶ 5.

When Mathews started working at the Branch, there were two white female full-time tellers, a white male part-time teller, a black male part-time teller, and a Hispanic female part-time teller. Doc. 54-2 at 67.  While Mathews was working at the Branch, Wells Fargo hired Samantha Scott (white female) as a full-time teller, Thurman Dinkins, Jr.

(black male) as a full-time teller, Arnece McCants (black female) as the service manager, Jenene Whitney (black female) as a part-time teller, and Candice Logan (white female) as a teller.[4] Doc. 54-2 at 125.

After completing orientation, Mathews started performing basic teller tasks, like cashing checks and making deposits and withdrawals. Doc. 54-2 at 81.  For tasks outside that scope, Mathews would obtain assistance from Harrelson or other more experienced tellers. Doc. 54-2 at 81.

When Mathews started working at the Branch, she was assigned to work from a specific station on the teller line. Doc. 54-2 at 87.  Mathews testified that this particular station had a malfunctioning computer that would often freeze up or lock her out of the system when she was trying to complete transactions. Doc. 54-2 at 87–88.  Mathews complained to Harrelson about this issue in August 2014, and Harrelson told her not to worry about it; he would help her if her computer continued to malfunction. Doc. 54-2 at 95 & 97.

On October 13, 2014, Mathews met with Keith and complained to him about the difficulties she was having with the computer at her workstation. Doc. 54-2 at 97.  Rather than give Keith an opportunity to respond, Mathews requested to transfer to another branch (although she did not specify which one) and threatened to resign. Doc. 54-2 at 101 & 104. Keith told Mathews that he would check for available transfers and get back to her. Doc. 54-2 at 104–105.  Mathews then tendered a resignation letter to Keith, which she had

---

[4] During her deposition, Mathews was uncertain whether Logan was employed as a part-time or full-time teller. Doc. 54-2 at 70.

prepared prior to their meeting, stating that she was resigning because of "poor treatment,

along with not being assigned adequate equipment to perform [her] daily tasks effectively

and efficiently." Doc. 54-2 at 108, 110 & 118; Doc. 54-3 at 14.  Mathews' resignation letter

does not mention discrimination, harassment, or retaliation, nor does it mention disparate

treatment based on her race or gender. Docs. 54-2 at 115 & 54-3 at 14.

When Mathews tendered her resignation to Keith during their October 13th meeting,

he "did not accept it." Doc. 54-2 at 108 & 118.  Instead, he responded by telling her that

he would "hold on to" her resignation letter, change her workstation, and see if he could

find her a transfer position. Doc. 54-2 at 118–119.  As a result, Mathews withdrew her

resignation. Doc. 54-2 at 119.

By November 1, 2014, Mathews was moved to a different station on the teller line.

Doc. 54-2 at 119, 122 & 161.  Around this same time, Mathews requested to transfer again,

but Keith never transferred her because there were no available positions into which she

could transfer. Doc. 54-2 at 155.  Mathews received access to SVP no later than December

2014. Doc. 54-2 at 126.

Around this same time, Keith and Harrelson started asking the tellers and other

employees, including Mathews, to go out together after work to get to know each other.

Doc. 54-2 at 114 & 151.  These invitations were made to a group, not to Mathews

individually, and Mathews always declined. Doc. 54-2 at 114–115 & 151.  Mathews did

not report these invitations because she saw no reason to report them. Doc. 54-2 at 153.

On November 17, 2014, Harrelson issued Mathews a performance improvement

plan ("PIP") based on her failure to meet the required standards for consistent presentation

of available offers to customers during in-store interactions for the first three weeks of November 2014. Docs. 54-2 at 162 & 54-3 at 15−17.  The standard was an 80% minimum disposition rate, and Mathews' performance ranged from 25.4% to 52.8%. Doc. 54-3 at 15−17.  The PIP expressly stated that consistent failures to meet and to sustain performance at an acceptable level could lead to further corrective action, up to and including termination. Doc. 54-3 at 15−17.  Mathews signed the PIP but did not write any comments in the comment section; she instead expressed her comments "verbally." Docs. 54-2 at 162−163 & 54-3 at 15−17.  She did not contact Wells Fargo's human resources department to discuss the PIP. Doc. 54-2 at 163.

Mathews' pay did not decrease as a result of the PIP on November 17. Doc. 54-2 at 169.  Mathews has no information to suggest that Harrelson issued her the PIP because of her race or gender. Doc. 54-2 at 178−179.  She also has no information to suggest that Keith or Harrelson shared the PIP with any of her coworkers or anyone outside of Wells Fargo. Doc. 54-2 at 163−164.

Mathews normally worked between 17 and 20 hours per week. Doc. 54-2 at 150. She alleges that her hours were reduced after she received the PIP. Doc. 54-2 at 146. However, in several pay periods after November 17, she worked the same or more hours per week as she had before the PIP. Doc. 54-2 at 145−150.  Mathews only recalled four times when she worked less than her usual weekly hours after receiving the PIP. Doc. 54-2 at 150.

On December 5, 2014, Mathews refused Harrelson's request to assist customers

during her scheduled work hours. Doc. 54-2 at 170.  Mathews began preparing to leave 15 minutes before the end of her shift, and although Harrelson asked her to assist with customers when she was still on shift, she refused because it was not "mandatory." Doc. 54-2 at 170–171.

As a result of this incident, on December 10, 2014, Harrelson issued Mathews an Informal Warning for her conduct. Doc. 54-3 at 18–19.  Mathews did not contact the human resources department to discuss this warning. Doc. 54-2 at 173.  She also does not know of anyone else who refused a request from Harrelson to stay late after a shift to assist customers or who was written up for refusing a request to stay late to assist customers. Doc. 54-2 at 174–175.  Mathews has no information to suggest that Harrelson issued her this warning because of her race or gender. Doc. 54-2 at 177–178.  She also has no information to suggest that Keith or Harrelson shared or discussed her December 10th warning with any of her coworkers or anyone outside of Wells Fargo. Doc. 54-2 at 176.

In May 2015, Mathews incurred three separate cash drawer shortages totaling $960.01. Doc. 61-2 at ¶ 3.  These shortages occurred on May 4, May 18, and May 22. Doc. 61-2 at ¶ 4.  The difference exceeded the limits set forth in Wells Fargo's Cash Balancing and Operating Loss Policy, which states that cumulative cash differences of $200 or more within a rolling three-month period may result in corrective action. Doc. 54-4 at ¶ 10.

Keith asked McCants[5] to monitor Mathews' work performance and breaks more closely because of her recent cash drawer shortages and concerns about her long breaks

---

[5] On April 15, 2015, McCants (black female) replaced Harrelson as the Branch's service manager. Doc. 54-2 at 179.

during that time. Doc. 54-4 at ¶ 11.  McCants prepared an informal warning for cash differences to be issued to Mathews on June 1, 2015. Doc. 54-4 at ¶ 12.  This warning required immediate and sustained improvement and explained that any additional shortages over $200 or more during the next three months could result in further corrective action. Doc. 54-4 at ¶ 12.  Mathews has no information to suggest that either Keith or McCants discussed the cash drawer shortages with anyone other than Mathews or those at Wells Fargo involved in investigating the shortages. Doc. 54-2 at 203–206.

On Friday, May 29, 2015, Mathews complained to McCants that Keith was harassing her by monitoring her work performance and bathroom breaks and that he was doing so because she is a black woman. Doc. 54-2 at 219–222.  Mathews asked McCants to speak with Keith about her concerns, and McCants told Mathews that she would speak to him and get back to her. Doc. 54-2 at 222.  At this same time, Mathews told McCants that if she did not speak with Keith promptly, she would submit her resignation the following Monday, June 1, 2015. Doc. 54-2 at 222.  The evidence shows that Whitney, another black female part-time teller, took breaks that were not monitored by Keith or anyone else at the Branch. Doc. 54-2 at 224.

On Monday, June 1, 2015, Mathews called the human resources department about her complaints concerning Keith. Doc. 54-2 at 101.  That same morning, Mathews reported to work at the Branch and asked McCants if she had spoken to Keith about her concerns. Doc. 54-2 at 227.  McCants explained that she had not yet had a chance to do so, and in response Mathews immediately tendered her resignation to McCants by letter she had prepared over the preceding weekend. Doc. 54-2 at 227–228.  Mathews' resignation letter

stated:

> I, Marquita Mathews have chosen to resign from my position as a part time Teller for Wells Fargo . . . after providing two weeks of service as a part time employee.  My last day will be the 15th of June, 2015.
>
> I am grateful to have been given the opportunity to work for a well-known and respected corporation and would also like to thank those whom were involved in the hiring process.

Doc. 54-3 at 20.   Mathews concedes that this resignation letter says nothing about discrimination, harassment, retaliation, or defamation. Doc. 54-2 at 228.

With the prepared June 1 informal warning still pending (but not yet issued to Mathews) when Mathews submitted her resignation, and with her trend in cash drawer shortages and declining work performance, Wells Fargo decided to accept her tendered resignation early, making it effective on June 4, 2015. Docs. 54-2 at 245 & 54-4 at ¶ 13. When Mathews reported to work on June 4, McCants informed her that "it had been decided with her, upper management, Keonte Keith, and HR" to accept her resignation effective that day. Doc. 54-2 at 245.

Wells Fargo has no records indicating that Mathews ever reported allegations of discrimination or harassment based on her race or gender. Docs. 54-4 at ¶ 17 & 54-5 at ¶ 4. There is also no evidence that Keith, Harrelson, or McCants made comments about Mathews' race or gender to Mathews or anyone else, or that Keith, Harrelson, or McCants made comments about anyone else's race or gender. Doc. 54-2 at 238–242.

## B.   Procedural History

Mathews filed a charge of discrimination with the Equal Employment Opportunity Commissioner ("EEOC") on September 10, 2015, alleging discrimination and retaliation

based on her race and gender. Doc. 54-3 at 21.  On April 7, 2016, the EEOC dismissed Mathews' charge and issued a notice of rights to sue. Doc. 54-3 at 24.  Mathews filed this lawsuit on June 22, 2016. Doc. 1.

## V.  DISCUSSION

### A.    Challenges to Mathews' Evidentiary Submissions

As noted above, Mathews submitted several exhibits to support her motion for summary judgment and to oppose Wells Fargo's motion. Docs. 50-1 to -8 & 60-1 to -8. Wells Fargo contests the court's consideration of this evidence because Mathews did not properly cite to the record evidence and because she did not properly authenticate the evidence she submitted on summary judgment. Doc. 55.  Wells Fargo further contends that, if Mathews' evidence is not considered, the court must grant summary judgment in its favor because the evidence it presented, which shows no genuine factual dispute on any of Mathews' claims, would be uncontested. Doc. 55.

Because Mathews is litigating this matter *pro se*, the court will consider her summary-judgment filings more leniently than it would review similar filings submitted by a trained lawyer. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (noting that *pro se* filings are held to a less stringent standard than those filed by lawyers). However, Mathews' *pro se* status does not excuse her from compliance with the Federal Rules of Civil Procedure and the applicable law governing summary judgment.  That said, having reviewed Mathews' submissions, the court agrees with Wells Fargo that she does not support all of her factual allegations with precise citations to evidence in the record. Still, Mathews does attempt to cite to the record evidence and other filings in the record,

and while those citations are not always clear and they do not follow every factual allegation, the court does not find these failings sufficiently flagrant or deficient to warrant a wholesale and perfunctory rejection of Mathews' summary-judgment submissions. Rather, as explained in Section IV above, the court will consider Mathews' submissions on summary judgment, including her evidentiary submissions, within the parameters of Rule 56 and the law of this Circuit governing the applicable standard of review for summary-judgment motions.

The court also is not persuaded by Wells Fargo's challenges to the authenticity of Mathews' evidence.  When considering a summary-judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form at trial. *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001).  Documents submitted at summary judgment are typically authenticated through affidavit or deposition testimony. *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1334 (S.D. Ala. 2003).  Here, Mathews did not submit an affidavit or deposition testimony properly authenticating the documents supporting her summary-judgment motion and opposing Wells Fargo's motion.  However, Mathews represents that several of the documents she submitted with her filings were created and produced by Wells Fargo, and Wells Fargo does not contend that any of Mathews' proffered documents are not true and correct copies of the documents they purport to be or that they are otherwise unreliable or not authentic.  What is more, it appears that these documents could be reduced to admissible, authenticated form at trial.  Therefore, the court finds no reason to reject Mathews' evidentiary submissions when resolving the present summary-judgment

motions.  Accordingly, Wells Fargo's objections to Mathews' evidentiary submissions are overruled.

**B.      Mathews' Motion to Strike and for Sanctions**

In Mathews' reply to Wells Fargo's response to her motion for summary judgment, rather than address the merits of her claims, Mathews cryptically argues that Wells Fargo's opposition should be stricken because Wells Fargo used "trickery" and intentionally disobeyed the court's orders. Doc. 57.  Mathews makes the same argument, although in a much clearer fashion, in her response in opposition to Wells Fargo's summary judgment motion, asking the court to sanction Wells Fargo for its behavior during discovery and to strike its motion from the record. Doc. 60.  Mathews argues that Wells Fargo has violated her Fourteenth Amendment due process and equal protection rights and has conspired to violate her civil rights, to obstruct justice, and to discriminate against her because of her race and gender.

In support of these requests, Mathews argues that she was not allowed to read and to sign her deposition and that one of the exhibits Wells Fargo submitted with its evidentiary submission contains a misrepresentation. Doc. 60.  Whether Mathews read and signed her deposition, however, is irrelevant to the pending summary-judgment motions, and Mathews has not demonstrated that difficulties with reading and signing her deposition hindered her ability to litigate her claims effectively.  Further, it appears that the exhibit about which Mathews complains contained a simple typographical error that Wells Fargo has already corrected. *See* Doc. 61-2.  In short, Mathews has not shown good cause or otherwise demonstrated that Wells Fargo's conduct warrants the severe remedies she

requests.  For those reasons, Mathews' motion to sanction Wells Fargo and to strike its motion for summary judgment from the record is denied.

## C.    Wells Fargo's Motion for Summary Judgment

### 1.    *Improperly Raised and Abandoned Claims*

Mathews has improperly raised a number of claims in connection with her summary-judgment submissions, none of which the court will consider.  These claims include Mathews' contention that (1) Wells Fargo violated her Fourteenth Amendment due process and equal protection rights by interfering with her ability to read and to sign her deposition and by failing to pay her for the entirety of her two-weeks notice period, even though she did not work the full two weeks; (2) Wells Fargo conspired under 42 U.S.C. § 1985(2) to interfere with her civil rights, to obstruct justice, and to discriminate against her; and (3) Wells Fargo retaliated against her and created a hostile work environment after she refused to participate in fraudulent sales practices against customers.

None of these claims are alleged in Mathews' amended complaint, and she has not attempted to amend her complaint to assert these claims. *See* Doc. 31.  It is well settled that a party cannot raise a claim for the first time in a summary-judgment motion or response brief. *E.g.*, *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 153 (11th Cir. 2005) (noting that Rule 8's liberal pleading standard does not permit plaintiffs to raise new claims at the summary judgment stage); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing summary

judgment.").  For these reasons, any claims improperly raised by Mathews for the first time in her summary-judgment filings, including her claims for Fourteenth Amendment due process and equal protection violations, civil conspiracy, and retaliation and hostile work environment based on her refusal to participate in fraudulent sales practices, will not be considered on summary judgment.

In addition to attempting to raise new claims, Mathews has also abandoned certain claims.  Wells Fargo argues in its opposition brief that Mathews' summary-judgment motion does not address her defamation claim in any way, and her reply brief makes no effort to respond to this argument. Docs. 50, 55 & 57.  Mathews also does not address Wells Fargo's motion for summary judgment on her defamation claim in any meaningful way. Doc. 60.  In this Circuit, claims that are neither defended nor addressed in response to a summary-judgment motion are deemed abandoned. *See Davis v. Coca-Cola Bottling Co., Consol.*, 516 F.3d 955, 971 n.36 (11th Cir. 2008); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).  Because Mathews did not address her defamation claim in her motion for summary judgment and did not respond to Wells Fargo's argument in its opposition brief that she has abandoned this claim, and because Mathews also did not defend or address Wells Fargo's motion for summary judgment on her defamation claim, the court recommends that Mathews'

defamation claim be deemed abandoned and that summary judgment be entered in Wells Fargo's favor on this claim.[6]

Finally, the court finds that Mathews has also abandoned her failure to promote claim.  Although Mathews' amended complaint states that she is pursuing a failure to promote claim, the body of that pleading contains no reference to a promotion, much less one that Mathews applied for and was rejected. Doc. 31.  Mathews' summary-judgment motion is similarly flawed in that the headings of some paragraphs reference "failure to promote," but the substance of the motion itself only vaguely claims that she "was overlooked for a promotion because earlier in her employment with the Defendant, Christopher Harrelson intentionally refused to train [her] because she is an African American woman, and disciplined her for her work performance." Doc. 50 at ¶ 5. Critically, Mathews never identifies the promotion for which she applied and was purportedly rejected or when this transpired, she never identifies who received this promotion, and she never addresses Wells Fargo's argument in its summary-judgment motion that her failure to promote claim—to the extent her vague references can be interpreted to allege such a claim—is time-barred because it occurred more than 180 days

---

[6] The court has not overlooked the fact that Mathews mentions the word "libel" twice in her response to Wells Fargo's motion for summary judgment—both times to argue that one of Wells Fargo's evidentiary submissions (specifically, Exhibit 3 to Keith's affidavit) is not a true and correct copy of that document because it contains a minor typographical error, and thus Wells Fargo is using that document to "libel" her. Doc. 60 at ¶¶ 18 & 19; Doc. 54-4.  Merely inserting the word "libel" in her response in opposition to Wells Fargo's motion, however, is not sufficient to demonstrate that Mathews is meaningfully defending this claim, particularly when Mathews does not address the specific merits of Wells Fargo's motion for summary judgment on this claim.  Moreover, even if such a passing reference were sufficient, Wells Fargo would still be entitled to summary judgment on Mathews' defamation claim because she has not met her burden to go beyond the pleadings and to demonstrate through competent evidence "specific facts showing that there is a genuine [dispute] for trial" on this claim. *Celotex*, 477 U.S. at 324.

before she filed her charge of discrimination with the EEOC.  Accordingly, as with her defamation claim, the court recommends that Mathews' failure to promote claim be deemed abandoned and that summary judgment be entered in Wells Fargo's favor on this claim.[7]

### 2.    *Administratively Barred Claims*

Prior to filing a Title VII lawsuit, "a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996).  If a plaintiff receives a notice of right to sue, he or she may then bring a judicial complaint, but "that complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Lawson v. KFH Indus., Inc.*, 767 F. Supp. 2d 1233, 1240 (M.D. Ala. 2011).

In other words, there are two general administrative prerequisites a Title VII plaintiff must meet before she can litigate her claims in federal court: (1) filing a timely charge of discrimination with the EEOC, and (2) including alleged instances of

---

[7] As with her defamation claim, even if Mathews had not abandoned her failure to promote claim, Wells Fargo would still be entitled to summary judgment on this claim because Mathews has failed to meet her burden to go beyond the pleadings and to demonstrate through competent evidence "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324.  Not only does Mathews fail to address this claim in any meaningful way in her motion for summary judgment and in response to Wells Fargo's, she has not demonstrated that she is entitled to judgment as a matter of law on this claim such that her motion should be granted or that there is a genuine factual dispute warranting a trial on this claim such that Wells Fargo's motion should be denied.  Mathews also has not demonstrated that her failure to promote claim was the subject of a timely filed charge of discrimination with the EEOC, which is an additional basis for dismissal.

discrimination in the charge of discrimination filed with the EEOC such that those allegations can be properly investigated (or exhausted) at the administrative level. Although Wells Fargo argues that several of Mathews' allegations fail on both fronts, the court concludes only that some of Mathews' allegations were not part of a timely filed charge of discrimination and, therefore, are precluded from consideration by the court.

To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the last discriminatory act. *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies.  The first step down this path is filing a timely charge of discrimination with the EEOC.") (citing 42 U.S.C. § 2000e-5(b) and *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal citations omitted)).   In the Eleventh Circuit, "[e]ven though the filing requirements are not jurisdictional in nature, they are necessary prerequisites—conditions precedent—to filing a claim in federal court." *Watson v. Republic Airlines, Inc.*, 553 F. Supp. 939, 943 (N.D. Ga. 1982) (citing *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1009–10 (11th Cir. 1982)).   When a defendant challenges whether a plaintiff adequately exhausted her administrative remedies, the plaintiff must prove that the conditions precedent have been satisfied. *Phillips v. City of Atlanta*, 2016 WL 5429666, at *12–13 (N.D. Ga. July 29, 2016).

Mathews filed her charge of discrimination—with the help of an attorney—on September 10, 2015. Doc. 54-3 at 21.  On her charge form, she checked the boxes for

discrimination and retaliation based on race and sex and indicated that the last date of discrimination was June 4, 2015—her final day of employment with Wells Fargo. Doc. 54-3 at 21. Mathews' charge does not allege discrimination, retaliation, or harassment as part of a "continuing action" of unlawful conduct. Doc. 54-3 at 21.

As a result, Wells Fargo argues that any allegations of discriminatory, retaliatory, or harassing conduct that occurred outside the 180-day period before Mathews filed her charge—*i.e.*, before March 14, 2015—are time barred and Wells Fargo is due summary judgment on those claims. Doc. 54. According to Wells Fargo, and from the court's review of the summary-judgment submissions, Mathews' purported untimely claims include: (1) placing her at a workstation in the back of the store with a malfunctioning computer from July to October 2014; (2) hiring Scott and Dinkins in July and August 2014, respectively, then placing them at workstations at the front of the store and providing them additional training and job duties in 2014; (3) not giving Mathews access to SVP until December 2014; (4) not giving Mathews proper credit for referrals until she received access to SVP in December 2014; (5) inviting Mathews to socialize with coworkers in 2014; (6) denying transfer requests Mathews made in 2014; (7) issuing Mathews the November 17, 2014 PIP and reducing her weekly hours thereafter; (8) not making Mathews aware of Wells Fargo's transaction processing, cash balancing, and operating losses policy until more than six months after she was hired; and (9) issuing Mathews the December 10, 2014 informal warning for refusing to assist customers. Doc. 54 at 11–12.

The court concludes that any claims of discrimination, retaliation, or harassment based on these allegations are time barred and cannot be considered by the court. All of

the misconduct alleged in these allegations—which consists of specific, isolated incidents spanning the course of several months—occurred more than 180 days before Mathews filed her charge of discrimination with the EEOC. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in a timely filed charge." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Because Mathews did not include these discrete discriminatory acts in a charge of discrimination filed within 180 days of their occurrence, any Title VII claims based on these acts are untimely.[8]

While the time period for filing a charge of discrimination may, under some circumstances, be subject to equitable doctrines such as tolling or estoppel, *see id.*, Mathews does not allege, nor has she produced, any evidence or argument demonstrating that the continuing violation doctrine or some other equitable principal applies to salvage her untimely claims.[9] To the contrary, Mathews' charge of discrimination indicates that she believed she was being discriminated against because of her race and gender from the very start of her employment with Wells Fargo. Doc. 54-3 at 22. Moreover, the record evidence reflects that Mathews' belief was based on specific, infrequent, and unrelated acts

---

[8] However, that is not to say that the existence of these past acts bars Mathews from filing a charge of discrimination about related discrete acts so long as those acts are independently discriminatory and the charge is timely filed. *Nat'l R.R. Passenger*, 536 U.S. at 113. Moreover, the statute does not bar an employee from using untimely prior acts as background evidence to support a timely claim. *Id.*

[9] "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Phillips*, 2016 WL 5429666, at *12. Under this doctrine, "it may be appropriate to extend the 180-day period to file an EEOC complaint where a plaintiff is unaware of discrimination until it becomes a pattern over time." *Id.*

of purported misconduct—not the type of frequent and related misconduct that could be viewed as a policy or practice of Wells Fargo.  In other words, the undisputed evidence shows that Mathews was not a plaintiff who was so unaware that discrimination was occurring that the continuing violation doctrine should salvage her untimely claims.  For these reasons, the court recommends that any discrimination, retaliation, and harassment claims based on the allegations described above be deemed untimely and summary judgment be entered in Wells Fargo's favor on these claims.

Alternatively, Wells Fargo argues that even if these claims are not time barred, Mathews should still be precluded from pursuing many of them because they were not properly exhausted before the EEOC.  "'No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge.'" *Thomas v. Miami Dade Pub. Health Trust*, 369 F. App'x 19, 22 (11th Cir. 2010) (quoting *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003)).  Wells Fargo contends that Mathews' claims of discrimination, retaliation, and harassment based on (1) not receiving access to SVP until December 2014; (2) being issued the December 2014 informal warning; (3) not receiving proper credits for referrals; (4) being issued a PIP in November 2014; and (5) being questioned about cash drawer shortages in May 2015 cannot be considered by the court because those allegations were not part of her EEOC charge.  The court does not agree.

Even if allegations are not specifically included in a plaintiff's EEOC charge, the court may still consider newly raised claims if they are "like or related to, or grew out of,

the allegations contained" in the charge. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2014). Construing Mathews' *pro se* submissions leniently, the undersigned is of the opinion that the allegations Wells Fargo challenges as not administratively exhausted are sufficiently like or related to the general allegations of discrimination, harassment, and retaliation alleged in Mathews' charge of discrimination and that the EEOC likely investigated, or could have investigated, those allegations when it was investigating the allegations set forth in Mathews' charge. Therefore, the court will not recommend dismissal of claims based on these allegations as administratively unexhausted.

### 3. Remaining Claims

Mathews' remaining claims are for discrimination based on her race and gender, a hostile work environment based on her race and gender, and retaliation for complaining about workplace discrimination and harassment. These claims are premised on the following allegations: (1) Mathews was questioned about cash drawer shortages in May 2015; (2) on May 29, 2015, Mathews complained to McCants that Keith was harassing her by monitoring her work performance and breaks; (3) Mathews asked McCants to speak to Keith about his alleged harassment in May 2015 but she did not; and (4) Wells Fargo accepted Mathews' resignation early and did not let her work out her two-weeks notice period. The court will address these claims below.

### a. Discrimination

Because Mathews' remaining discrimination claims are premised on circumstantial evidence, she must prove them through the burden-shifting framework set forth in

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  Under this framework, if Mathews establishes a *prima facie* case, then the burden of production, but not of proof, shifts to Wells Fargo to articulate a legitimate, nondiscriminatory explanation for its challenged actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once Wells Fargo articulates such an explanation, "the presumption [of discrimination] raised by the prima facie case is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks and citation omitted).  The burden of production then shifts back to Mathews and merges with her ultimate burden to prove that she has been the victim of intentional discrimination. *See Burdine*, 450 U.S. at 253.  To prevail, Mathews must demonstrate that Wells Fargo's proffered reason for its challenged actions was not the true reason for its decision and that her race or gender was. *See Hicks*, 509 U.S. at 507–08.  "It is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519.

Mathews' remaining discrimination claims fail because she cannot met her *prima facie* burden.  To the extent Mathews is alleging a race and gender discrimination claim based on disparate treatment in the terms and conditions of her employment, an indispensable element of her *prima facie* case is proof that she suffered an "adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001). The same can be said to the extent she is alleging a claim for wrongful termination based on her race and gender. *See Albert-Aluya v. Burlington Coat Factory Warehouse Corp.*, 470 F. App'x 847, 850 (11th Cir. 2012).

"In the context of Title VII's anti-discrimination clause, an adverse employment action is a serious and material change in the terms, conditions, or privileges of employment, and that change must be viewed through the lens of a reasonable person in the circumstances." *Byrne v. Ala. Alcoholic Bev. Control Bd.*, 635 F. Supp. 2d 1281, 1292 (M.D. Ala. 2009).  "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling." *Webb v. Int'l Bus. Machines Corp.*, 458 F. App'x 871, 875 (11th Cir. 2012).  Within this framework, the monitoring of Mathews' work performance and breaks does not qualify as an adverse employment action.  There is no evidence that Mathews suffered a serious and material change in the terms, conditions, or privileges of her employment as a result of this monitoring, and she does not present argument or evidence to support such a claim. Doc. 54-4 at ¶ 11 ("Wells Fargo did not issue any corrective action to Mrs. Mathews based on the monitoring of her work performance and breaks."); *see also Webb*, 458 F. App'x at 875 (explaining that the asserted impact of an adverse employment action "cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment") (internal quotation marks omitted).  Mathews' displeasure or frustration over the monitoring of her work performance and breaks is not enough.

Wells Fargo's decision to accept Mathews' voluntary resignation early also does not qualify as an adverse employment action for purposes of her discrimination claims. "'An employee's resignation is not an adverse employment action, absent evidence that it is the product of a constructive discharge.'" *Hammonds v. Hyundai Motor Mfg. Ala., LLC*, 2011 WL 2580168, at *4 (M.D. Ala. June 28, 2011) (quoting *Rutledge v. SunTrust Bank*,

2007 WL 604966, at *6 (M.D. Ala. 2007) (citing *Poole v. Country Club of Columbus, Inc.*,

129 F.3d 551, 553 n.2 (11th Cir. 1998))).   To assert a successful claim of constructive

discharge, a plaintiff must show working conditions "so intolerable that a reasonable

person in her position would have been compelled to resign." *Id.* (internal quotation marks

omitted).   "So long as the resignation was voluntary and not a result of coercion or duress,

there is no constructive discharge." *Id.* (citing *MacLean v. City of St. Petersburg*, 194 F.

Supp. 2d 1290, 1300 (M.D. Fla. 2002)).

Mathews never alleges or argues that her working conditions were so intolerable

that she was forced to resign, nor does she present any evidence to support such a claim.

Mathews has continually maintained that she resigned of her own volition, and her

resignation letter—which affirmatively states that she is choosing to resign, thanks Wells

Fargo and expresses gratitude for the opportunity to have worked there, and indicates that

she plans to work for an additional two weeks—supports the conclusion that her working

conditions were not intolerable and that her resignation was voluntary, not the product of

coercion or duress. Doc. 54-3 at 20.   Because Mathews has not shown that she suffered an

adverse employment action, her discrimination claims fail as a matter of law.

Wells Fargo is also due summary judgment on Mathews' discrimination claims

because she has failed to present evidence of a similarly situated comparator.   To prove a

discriminatory termination claim, a plaintiff must show that she was fired from a position

for which she was qualified and replaced by someone outside of her protected class. *Kosher

v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016).   Not only has Mathews

failed to show that she was fired from a position for which she was qualified, she never

alleges that Wells Fargo replaced her with someone outside her protected class, and there is no evidence before the court to support such a claim.  Thus, Mathews' discriminatory termination claim fails as a matter of law.

To the extent Mathews is alleging a disparate treatment claim in the terms and conditions of her employment, she has not shown that she was treated differently from similarly situated employees outside of her protected class. *See Johnson v. Miller Brewing Co.*, 341 F. App'x 477, 478 (11th Cir. 2008) ("Under this framework, the plaintiff has the burden of establishing a *prima facie* case of disparate treatment, which [she] can do by showing that [she] was a qualified member of a protected class and was subject to an adverse employment action in contrast with similarly situated employees outside the protected class.") (internal quotation marks omitted).  "A plaintiff is similarly situated to another employee only if the 'quantity and quality of the comparator's misconduct' are 'nearly identical.'" *Id.* (quoting *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006)).  The plaintiff and comparator must be similarly situated in "all relevant respects." *Id.* (internal quotation marks omitted).

Mathews' charge alleges that white or Hispanic employees who decided to resign were allowed to work through their two-weeks notice period but she was not. Doc. 54-3 at 23.  Mathews does not identify these comparators, though, and Wells Fargo presented evidence showing that three former employees—Neomi Cole, Eddie Orentes, and Chris

Harrelson—voluntarily resigned while in good standing with Wells Fargo.[10] Doc. 54-4 at ¶ 14.   Assuming these three are Matthews' purported comparators, only one, Cole (Hispanic female), was a part-time teller like Mathews.   Orentes (Hispanic male) was a banker and Harrelson (white male) was the service manager.   Thus, Orentes and Harrelson are not similarly situated to Mathews as a matter of law.   What is more, none of these individuals had experienced multiple cash drawer shortages in a single month before tendering their resigning, as Mathews had. Doc. 54-4 at ¶ 14.   To the contrary, they were all in good standing at the time they resigned.   Because Mathews has not demonstrated that she was treated differently than similarly situated employees outside her protected class, her disparate treatment claim fails as a matter of law.

The final reason that Mathews' discrimination claims fail is that she has not shown that Wells Fargo's legitimate, nondiscriminatory reason for its actions were a pretext for discrimination.   To meet its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for its challenged actions, Wells Fargo presented evidence showing that Mathews' work performance and breaks were monitored more closely because of her recent cash drawer shortages and concerns over her longer than expected breaks. *McCloud v. Potter*, 257 F. App'x 185, 187 (11th Cir. 2007).   At the time of her resignation, Wells Fargo was investigating Mathews for the cash drawer shortages and planned to issue her corrective action.   In light of these circumstances, Wells Fargo elected

---

[10] Although Wells Fargo cites to pages 234 to 235 of Mathews' deposition testimony when arguing that she identified Cole, Orentes, and Harrelson as comparators, these pages of Mathews' deposition were not included in Wells Fargo's evidentiary submission to the court. Docs. 54 at 15 & 54-2.

to accept Mathews' resignation early rather than allow her to work through her two-weeks notice period.   The court finds that these reasons satisfy Wells Fargo's burden of articulating a legitimate, nondiscriminatory reason for its challenged actions against Mathews.

As a result, Mathews must come forward with some evidence demonstrating that Wells Fargo's legitimate, nondiscriminatory reasons for its actions were a pretext for unlawful discrimination. *See Hicks*, 509 U.S. at 507–08.   Indeed, she must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).   Mathews has failed to meet her burden.   She argues that Wells Fargo accepted her resignation earlier than she requested to prevent an investigation into her complaints of race and gender discrimination, but she has only presented speculation to support this claim.   There is no evidence in the record indicating Wells Fargo accepted Mathews' resignation early to avoid an investigation into her complaints or for any reason related to her race or gender.   To the contrary, Wells Fargo presented evidence showing that it has no record indicating that Mathews contacted the human resources department to report workplace discrimination or retaliation based on her race or gender, and Mathews has presented no evidence to rebut Wells Fargo's evidence on this issue. Doc. 54-5 at ¶ 4.

Further, Keith and McCants, both of whom were the decision makers in this instance (along with unidentified members of "upper management"), are of the same race as Mathews and McCants is of the same gender.   Where the "decision makers are in the same protected class as the employee complaining about an adverse employment decision, the

employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about." *Holston v. The Sports Auth., Inc.*, 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000) (internal citations omitted); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1153 (N.D. Ga. 1997) ("[I]t is extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."). Mathews has presented no evidence or argument to overcome the more difficult burden of showing that Keith, a black man, and McCants, a black woman, were intentionally discriminating against her.

In sum, Mathews has failed to present any evidence to demonstrate that a genuine dispute of material fact exists with respect to her discrimination claims. Mathews has not presented meaningful argument to rebut Wells Fargo's motion for summary judgment on these claims, nor has she presented any evidence to create a factual dispute warranting a trial on these claims. Accordingly, for the reasons stated above, the court recommends that Wells Fargo's motion for summary judgment be granted on Mathews' discrimination claims.

### b.    Hostile Work Environment

Mathews also asserts a claim for hostile work environment based on her race and gender. "Title VII prohibits a hostile work environment where repeated conduct, 'such as discriminatory intimidation, ridicule, and insult' collectively creates 'one unlawful employment practice.'" *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 847 (11th Cir. 2013) (quoting *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008)) (internal quotation marks omitted). To establish a hostile work environment, Mathews

must show that (1) she belongs to a protected group, (2) she was subjected to harassment, (3) the harassment was based on a protected characteristic, (4) the "harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment," and (5) Wells Fargo is responsible for the hostile environment under either a theory of direct or vicarious liability. *Id.*

Mathews has not presented any evidence showing that the monitoring of her work performance and breaks or the questioning about cash drawer shortages was based on her race or gender.  In fact, the evidence shows that Whitney, another black female part-time teller, took breaks that were not monitored by Keith or anyone else at the Branch, belying her claim that her work performance and breaks were monitored because she is a black woman.   Mathews has also presented no evidence demonstrating that Wells Fargo questioned her about cash drawer shortages because of her race or gender. Doc. 54-2 at 224.  In fact, Mathews testified that neither Harrelson, Keith, nor McCants made comments about her or anyone else's race or gender.  Thus, even if Mathews was being subjected to harassing conduct, she has not demonstrated that it was because of a protected characteristic.

Still, even if Mathews could show that she was being harassed because of a protected characteristic, she has not presented any evidence showing that the alleged harassment was sufficiently severe or pervasive.  To satisfy the severe and pervasive element, Mathews must show that the acts were "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787

(1998).  Here, even when construing the evidence in a light most favorable to Mathews, the court struggles to discern what alleged events could be perceived as creating a hostile and abusive work environment.  There is simply no evidence of harassment so severe and pervasive that it altered the terms and conditions of Mathews' employment.  At most, Mathews points to harassment based on the micromanaging of her work performance and breaks and questioning about her three cash drawer shortages in a single month.  This is not the type of severe or pervasive conduct that gives rise to a Title VII hostile work environment claim, and Mathews has not pointed the court to any authority finding a hostile work environment based on events similar to those alleged here. *See, e.g.*, *Aristyld v. City of Lauderhill*, 543 F. App'x 905, 909 (11th Cir. 2013) (finding that reprimands and isolated comments did not rise to the level necessary to support a hostile work environment claim).  For these reasons, the court recommends that summary judgment be granted in Wells Fargo's favor on Mathews' hostile work environment claim.

### c.    Retaliation

Finally, Mathews alleges that Wells Fargo retaliated against her by accelerating her resignation date after she complained to McCants about Keith's harassment in May 2015.  Title VII prohibits employers from retaliating against an employee "because [s]he has opposed any . . . unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e−3(a).  To establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity,

(2) she suffered a materially adverse employment action, and (3) there was a causal link between the two. *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).

First, Mathews' retaliation claim fails because, as explained above, she did not suffer a materially adverse employment action.  The undisputed evidence shows that Mathews chose to resign; she was not forced to resign due to coercion or duress.  What is more, assuming that Mathews engaged in protected activity when she complained to McCants, she has not shown that this activity was the "but for" cause of Wells Fargo's decision to accelerate the effective date of her resignation.  "Title VII retaliation claims require proof that [the] protected activity was a but-for cause of the alleged adverse action by the employer." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (internal quotation marks omitted).  Thus, Mathews must demonstrate that Wells Fargo's alleged adverse action would not have happened but for her protected activity.  She has failed to do so.

The undisputed evidence shows that, during Mathews' employment with Wells Fargo, she had been the subject of a PIP and corrective action for refusing to provide service to customers, and she had already submitted and withdrawn one voluntary resignation. Doc. 54-3 at 14–19.  Once Wells Fargo discovered Mathews' three cash drawer shortages in May 2015, the decision was made to issue her an informal warning on June 1, 2015, but Mathews voluntarily resigned before that could be done.  Given Wells Fargo's documented concerns about Mathews' work performance and her trend in cash drawer shortages, it decided to accept her voluntary resignation early rather than permit her to work through her two-weeks notice period.  This evidence, which Mathews has not

meaningfully disputed, shows the litany of issues Wells Fargo was experiencing with Mathews—and it undermines any claim she could assert that she would have remained employed with Wells Fargo if not for her complaints to McCants about Keith. Accordingly, because Mathews has presented no evidence or argument showing that her complaints to McCants about Keith were the "but for" cause of Wells Fargo's early acceptance of her resignation, she has failed to establish a *prima facie* case of retaliation. The court therefore recommends that Wells Fargo's motion for summary judgment be granted on this claim.

**D.    Mathews' Motion for Summary Judgment**

Just as Mathews failed to present evidence to overcome Wells Fargo's motion for summary judgment, she has also failed to present sufficient evidence to support her own motion and to demonstrate that she is entitled to summary judgment on any of her claims. Accordingly, for the reasons set forth above, the court recommends that Mathews' motion for summary judgment be denied.

## VI.  CONCLUSION

Accordingly, for the reasons stated above, it is ORDERED as follows:

1.    Wells Fargo's objections to Mathews' evidentiary submissions are OVERRULED;

2.    Mathews' motion to strike and for sanctions (Doc. 60) is DENIED;

3.    Any claims improperly raised by Mathews for the first time in her summary judgment filings, including her claims for Fourteenth Amendment due process and equal protection violations, civil conspiracy, and retaliation and hostile work environment based

on her refusal to participate in fraudulent sales practices, are not considered by the court on summary judgment.

The undersigned further RECOMMENDS that, for the reasons stated above:

1.     Wells Fargo's motion for summary judgment (Doc. 54) be GRANTED in its entirety; and

2.     Mathews' motion for summary judgment (Doc. 50) be DENIED in its entirety.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation no later than **November 29, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the district court.  The parties are advised that this report and recommendation is not a final order of the court, and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 15th day of November, 2017.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE